UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDAN BEARD,

    Plaintiff,

v.                                                                                    Case No. 8:23-cv-319-WFJ-AAS

THOUSAND TRAILS PEACE RIVER
and LISA JACQUES,

    Defendants.
_____/

## ORDER

Before the Court is Defendant MHC Property Management, L.P.'s[1] motion to dismiss (Dkt. 25), Defendant Lisa Jacques' motion to dismiss (Dkt. 26), and the accompanying declarations (Dkts. 27, 28). Plaintiff submitted his response and supplemental response to the pending motions (Dkts. 29, 31). After careful consideration of the allegations of the Amended Complaint (Dkt. 22), the submissions, and the applicable law, the Court concludes the Amended Complaint is due to be dismissed.

### BACKGROUND

---

[1] Plaintiff states in the body of the Amended Complaint that he intends to change the style of the case to reflect the correct name of the Defendant—from "Thousand Trails Peace River" to "MHC Property Management, L.P." (Dkt. 22 at ¶1).

Plaintiff Brendan Beard, proceeding *pro se*, sues his former employer, MHC Property Management, L.P. ("MHC"), and Defendant Lisa Jacques, another employee of MHC, for racial retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. The Amended Complaint alleges these facts which the Court presumes are true.

MHC is a management company that operates and manages Thousand Trails Peace River RV resort in Wauchula, Florida. Dkt. 27 ¶ 4.[2] Ms. Jacques is the manager for the resort. Dkt. 16 ¶ 3. In early 2022, Mr. Beard was staying at the resort pursuant to his personal lifetime camping membership. Dkt. 22 at 5 ¶¶ 16, 17, 19.

Mr. Beard asked someone at the resort if he could volunteer to help in the recreational building. *Id*. at 4 ¶ 4. The person he spoke with encouraged him to apply for employment there and told him he would be a "good fit" for the job. *Id*. at 4 ¶ 5. Beard started working for MHC at the Wauchula resort on February 7, 2022, as an activities assistant to Ms Jacques. *Id*. at 4 ¶¶ 6–7; Dkt. 1-1 at 1.

Over the next few weeks, Mr. Beard alleges that he observed "problems" at the resort with "[Ms. Jacques'] behavior." Dkt. 22 at 4 ¶ 12. On March 19, according to Mr. Beard, he "specifically confronted [Jacques] regarding her

---

[2] Although Plaintiff alleges that Thousand Trails Peace River in Wauchula is "wholly owned by MHC" (Dkt. 22 at 4 ¶ 1), Ms. Jacques as the property manager for MHC at Wauchula avers MHC manages and operates the resort (Dkt. 27 ¶¶ 3–4).

forcing a black employee to wash her personal car as a requirement of his employment." *Id*. He asserts that he "witnessed the employee perform this task multiple times while on duty." *Id*. Mr. Beard states that at the time, he believed the policy of forcing an employee "to do extra unpaid chores as a condition of employment" when this policy "was only applied to a person of color" would violate Title VII. *Id*. at 5 ¶ 13.

The evening of March 21, 2022, Beard told Ms. Jacques that he intended to quit but would work through the end of March. *Id*. at 5 ¶ 14. During this conversation, he told her that he would be filing a complaint with human resources. *Id*. The next morning on March 22, Mr. Beard was terminated "without reason." *Id*. at 5 ¶ 15.

On March 23, Mr. Beard's personal camping membership in the resort was placed in review status for termination. Dkt. 22 at 5 ¶ 16. Four months later, on July 22, his membership was terminated for creating a disturbance or situation that disturbed a fellow member at the Fiesta Keys location of Thousand Trails resort. *Id*. at 5 ¶ 17. Mr. Beard denies this accusation, alleging that he has never been to the Fiesta Keys location. *Id*. at 5 ¶ 18. As a result of his membership termination, he was required to leave the Wauchula resort. *Id*. at 5 ¶ 19.

Plaintiff describes the unlawful employment practice as having "only black employees to do personal errands as a condition of employment." *Id*. at 5.[3] Beard identifies the protected activity in this retaliation claim as his verbal complaints to Ms. Jacques objecting about this policy or practice. *Id*. at 6. He characterizes the protected activity as oppositional. *Id*.

Around November 2022, Mr. Beard filed a charge of discrimination with the EEOC and Florida Commission on Human Relations ("FCHR"). Dkt. 1-1. On the form, he described the unlawful discriminatory act as "Retaliation." *Id*. at 1.

Under the section on the form titled "Particulars," Beard wrote that before he was actually placed on the payroll, Ms. Jacques "was having [Beard] work under the table and bank my hours so when I was hired, I would be paid." *Id*. He stated that after he was officially hired, the situation became "worse" because Ms. Jacques was "unprofessional" and used "inappropriate language." *Id*. Mr. Beard wrote that he told Ms. Jacques he would report her "for hostile workplace environment, for fraud by having me work off the books for several weeks . . and for hiring an employee to specifically clean personal cars and other violations." *Id*.

According to Mr. Beard, Ms. Jacques fired him the following day "with no justification because [Beard] was never disciplined or told [his] performance was

---

[3] Although Plaintiff concludes this employment practice creates a "hostile work environment" (*see* Dkt. 22 at 5), the facts as alleged do not state such a claim for relief.

4

not up to company standards." *Id*. He concludes that he was never paid for all the hours he worked, and more importantly, he and his wife lost his lifetime camping membership in retaliation for reporting Ms. Jacques. *Id*. He claims the "unlawful termination" of his membership cost him more than $9,000. *Id*. at 2.

## DISCUSSION

After each Defendant filed a motion to dismiss the initial complaint, Plaintiff filed the Amended Complaint. Dkts. 14, 15, 22.[4] Both Defendants contest the sufficiency of service of process in their respective motions. Defendant MHC has recently agreed to accept service of process. Dkt. 33. Before considering the issue of service on Defendant Lisa Jacques, the Court addresses the other grounds raised: (1) failing to exhaust administrative remedies; (2) improperly naming fictitious John Does; and (3) improperly naming Ms. Jacques as a party.

### *Pleading Standards*

The Court accepts all factual allegations, not legal conclusions, as true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

---

[4] Defendants understandably take issue with the late filing of the Amended Complaint, which was almost two weeks beyond the 21 days permitted to amend as of right. Before Plaintiff amended his initial complaint, he should have obtained leave of court and Defendants' consent. *See* Fed. R. Civ. P. 15(a); Local Rule 3.01(g), M.D. Fla. Although *pro se* parties must adhere to the Federal Rules of Civil Procedure and the Florida Middle District's local rules, *see Albra v. Advan., Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), under the circumstances here, the parties are best served by the Court addressing the determinative issues at this juncture.

*Twombly*, 550 U.S. 544, 556 (2007) concerning reasonable inferences); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true).[5]  To survive a motion to dismiss filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., the complaint must contain sufficient facts to state a claim for relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  While Rule 8(a) does not require detailed allegations, it does require more than mere "labels and conclusions."  *Id*. (quoting *Twombly* at 555).

*Pro se* pleadings are held to a "less strict standard than pleadings filed by lawyers and thus are construed liberally."  *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).  Nevertheless, the Court will not "rewrite an otherwise deficient pleading to sustain an action."  *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 970 n.1 (11th Cir. 2015) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).  *Pro se* litigants must still conform to procedural rules.  *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)).

---

[5] *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (stating "legal conclusions masquerading as facts" will not prevent dismissal).

6

*Exhaustion of Administrative Remedies*

MHC seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies. A Title VII judicial complaint may be filed only after an employee exhausts his administrative remedies which starts with a timely charge of discrimination. 42 U.S.C. § 2000e-5(e)); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *see also Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (*per curiam*). In a deferral state such as Florida, the employee must file the charge with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1);[6] *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). If the charge is not timely filed, the judicial claim is barred. *Id*.

The claim alleged in the judicial complaint "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The purpose behind filing a complaint first with the agency "is to trigger the investigatory and conciliatory procedures of the EEOC." *Sanchez*, 431 F.2d at 466. In keeping with this purpose, courts are

---

[6] Section 2000e-5(e)(1) provides in pertinent part: "A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred . . ., except that in a case [in] which the person aggrieved has initially instituted proceedings with a State or local agency . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred[.]"

7

cautioned not to strictly interpret the scope of an EEOC charge or permit technicalities to preclude Title VII claims. *Gregory*, 355 F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 465); *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Sanchez* and *Gregory*).

Mr. Beard dual filed his charge with the FCHR and EEOC on November 22, 2022—or at least that is the day he electronically signed the charge of discrimination. Dkt. 1-1. Beard pinpoints the start date of the discrimination as February 14, 2022, and the end date as March 22, 2022. *Id*. Although the charge was filed within 300 days of retaliation, the question of timeliness turns on whether the claim made in the judicial complaint is covered by or included in the charge made.

An examination of the November 2022 charge of discrimination shows that a race-based retaliation claim was never made. Nowhere in the written charge appears the word "race" or "racial" or words describing a color or race such as "black." In particular, the color or race of the employee who cleaned "personal cars" is missing, and no other facts in the charge would put one on notice that the race of the individual was important, or for that matter, the sex, age, or national origin of the employee. In short, stating that an employee was forced to do personal work on a car during work hours does not support a reasonable conclusion that evidence of a race-based retaliation would be uncovered in the investigation.

8

*See*, *e.g.*, *Ortiz v. Waste Mgmt., Inc. of Fl.*, 808 F. App'x 1010, 1014 (11th Cir. 2020) (holding plaintiff's newly-added assertion in civil complaint that he was treated differently based on sex did not merely amplify, clarify, or more clearly focus the allegations in the EEOC charge) (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) with a similar holding); *William v. H. Lee Moffitt Cancer Ctr. & Research Inst., Inc.*, No. 8:09-cv-784-VMC-TGW, 2010 WL 5058513, at*12 (M.D. Fla. Dec. 6, 2010) (dismissing as a matter of law for failure to exhaust administrative remedies those Title VII claims not within the scope of the EEOC charge) (citing *Hillemann v. Univ. of Cent. Fla.*, 411 F. Supp.2d 1354, 1364 (M.D. Fla. 2004) with a similar holding).

To be clear, this case does not involve the technicality of merely checking the wrong box or failing to check any box at all on the charge form.[7] *See*, *e.g.*, Gregory, 355 F.3d 1277, 1280 (affirming district court's finding that retaliation lawsuit was not barred by employee's failure to mark the retaliation space or box on the EEOC form). In fact, the form the Plaintiff completed contains no boxes at all with instructions to check. Dkt. 1-1 at 1. Beard simply typed in the word "Retaliation" under the section denoted "Discrimination Based On," which appears on his form. He could have added any descriptive words he wished.

---

[7] The boxes to check within "Discrimination Based On" may include race, color, sex, religion, national origin, retaliation and so forth.

The issue remains as to whether the facts or statements in the charge encompass a race-based retaliation claim. As already discussed, the charge does not contain any information likely to alert someone that race—any more than sex, age, or national origin—was the basis for retaliation. Thus, although the charge of discrimination was filed within the 300-day period, it was not until mid-February 14, 2023, when Mr. Beard filed this lawsuit, that he mentioned the race of the unidentified employee was "black." Because the judicial complaint is limited by the scope of the charge, the Amended Complaint must be dismissed with prejudice.

### *Additional Defendants*

Even if Plaintiff's claim were not barred, Plaintiff has not properly pleaded a case against additional fictious party defendants or Ms. Jacques individually. In his vague and overbroad descriptions, Plaintiff attempts to name every "entity" or all "entities" that may have played any part in forming the basis of this action. Dkt. 22 at 2–3. Naming a John Doe defendant requires a description so specific as to be "at the very worst, surplusage." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Moreover, there is no indication that anyone other than MHC and Ms. Jacques as the manager of MHC are tied to his complaints.

Notably, Ms. Jacques as an individual employee of MHC is not amenable to suit under Title VII.[8]  *See Dearth v. Collings*, 441 F.3d 931, 933 (11th Cir. 2006); *Albra*, 490 F.3d at 833 ("[T[here is no individual liability for violations of Title VII.").  The Amended Complaint is therefore dismissed with prejudice as to Defendant Ms Jacques.

While cognizant of the Plaintiff's *pro se* status, the Court finds that any amendment would be futile.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (affirming denial of leave to amend complaint as futile "when the complaint as amended would still be properly dismissed").  Granting Beard leave to amend would be pointless, as his claim is barred for failure to exhaust administrative remedies.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1) Defendant MHP Property Management, L.P.'s motion to dismiss (Dkt. 25) is granted consistent with this Order.

2) Defendant Lisa Jacques' motion to dismiss (Dkt. 26) is granted consistent with this Order.

3) The Amended Complaint (Dkt. 22) is dismissed with prejudice.

---

[8] Ms. Jacques is correct that she was not properly served.  An individual must be served personally or at their usual place of abode with someone of suitable age who resides there.  Fed. R. Civ. P. 4(e); Fla. Stat. § 48.031(1)(a).  The Court need not address this issue given the disposition of this case.

4) The Clerk is directed to change the case data information to reflect that Defendant Thousand Trails Peace River is terminated, and Defendant MHP Property Management, L.P. is substituted and added on the docket.  Thereafter, the Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on July 19, 2023.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISED TO**:
Plaintiff, *pro se*
Counsel of record